# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREA MOREHEAD ALLEN ) | |
| ) | Civil Action No. _____ |
| Plaintiff, ) | |
| ) | **JURY TRIAL DEMANDED** |
| vs. ) | |
| ) | |
| TEGNA, INC., d/b/a ) | |
| WTHR CHANNEL 13, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DAMAGES

Plaintiff, by counsel, Terrance Kinnard, for her Complaint for Damages, respectfully state the following:

## PRELIMINARY STATEMENT

1. This is an employment discrimination action brought by Plaintiff Andrea Morehead Allen, against her employer, Defendant TEGNA, Inc. d/b/a WTHR Channel 13, for unlawfully discriminating against her on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., as amended.

## PARTIES

2. Andrea Morehead Allen ("Andrea Morehead") is a natural person who resides in Indianapolis, Marion County, Indiana, with her husband and young son.

3. Andrea Morehead is a "person" and an "employee" as those terms are defined by applicable state and federal statutes.

4. TEGNA, Inc. ("TEGNA") is a for-profit corporation, organized under the laws of the state of Delaware.

5. For purposes relevant to this litigation, TEGNA does business as WTHR Channel 13,

an Indianapolis market NBC affiliate.

6. TEGNA is a "person," "employer," and "covered entity," as those terms are defined by applicable state and federal statutes.

## JURISDICTION AND VENUE

7. The Plaintiff herein invokes the Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and 1343.

8. Venue in the Indianapolis Division of the Southern District of Indiana is appropriate pursuant to 28 U.S.C. § 1391(b), as a substantial portion of the events which give rise to this action took place within this District.

9. Andrea Morehead satisfied her obligation to exhaust administrative remedies, having timely filed EEOC Charge No. 470-2020-02375, receiving the appropriate Notice of Right to Sue on October 15, 2020, and timely filing this action less than ninety (90) days following receipt of said notice.

## FACTUAL ALLEGATIONS

10. Andrea Morehead is a seven-time Emmy Award-winning television news anchor for local NBC affiliate WTHR Channel 13, where she was hired in October 1999.

11. WTHR was purchased by Defendant TEGNA on August 8, 2019, at which time Andrea Morehead became a TEGNA employee.

12. All events complained of herein occurred on or after the date TEGNA acquired WTHR.

13. At all times relevant to this action, Andrea Morehead has met or exceeded TEGNA's legitimate job performance expectations.

14. On May 27, 2020, Andrea Morehead filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that TEGNA discriminated against her due to her disability, race, and sex, in violation of the Americans with Disabilities Act of

1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended.

15. Andrea Morehead was diagnosed with breast cancer during September 2018, and she completed daily radiation treatment on December 20, 2018, when she rang the traditional bell.

16. During February 2019 Andrea Morehead started a regimen of immunotherapy that was scheduled to last one year.

17. Among other things, immunotherapy can cause the following side effects: "Fatigue (feeling tired), fever, chills, weakness, nausea (feeling sick to your stomach), vomiting (throwing up), dizziness, body aches, and high or low blood pressure."[1]

18. Andrea Morehead's new treatments required considerable time away from work, not only to receive treatment but also to recover from the sometimes-severe side effects.

19. Andrea Morehead's workday was often split between various tasks, including but not limited to: brainstorming story ideas, conducting taped interviews, editing stories for on-air presentation, preparing for newscasts, and anchoring WTHR's newscasts.

20. Prior to the COVID-19 pandemic, Andrea Morehead would often work at WTHR's studios, located in downtown Indianapolis.

21. Andrea Morehead worked among other news personalities, management, photojournalists, producers, and other support staff.

22. On or about February 27, 2020, Andrea Morehead became aware of a very disturbing conversation, which took place amongst her colleagues at WTHR.

23. Specifically, assistant news director Perry Pace, executive producer Taylor Beck, producer Ashley Hardin-Hammons, and news anchor Anne Marie Tiernon discussed a $20 bet regarding whether Andrea Morehead would return from her cancer treatments.

24. This conversation took place after a news director informed other staff members that

---

[1] https://www.cancer.net/navigating-cancer-care/how-cancer-treated/immunotherapy-and-vaccines/side-effects-immunotherapy. Last accessed 8 January 2021.

3

Andrea Morehead would not be coming in that day due to her cancer treatment.

25. Such conversations were a frequent occurrence within Andrea Morehead's work environment and were clearly poking fun at Andrea Morehead's unfortunate cancer diagnosis and the treatment she was receiving.

26. Although TEGNA managers were present during these conversations, no action was taken to admonish the participants and the behavior was allowed to continued unfettered.

27. Due to her popularity and influence with Indianapolis viewers, Andrea Morehead decided to make public her battle with breast cancer.

28. While thousands of WTHR viewers shared support with Andrea Morehead, her co-workers poked fun at her suffering and created an untenable work environment.

29. Although Andre Morehead shared her general cancer journey with WTHR viewers, she did not share intimate details of her treatments or the terrible treatment side effects.

30. Andrea Morehead instead shared these personal medical details only with TEGNA management in order to request leave from work and to excuse any treatment-related tardiness or absences.

31. After Andrea Morehead discussed these issues with Michael Brouder, the WTHR General Manager, and other station managers began a relentless campaign of harassment.

32. For example, in February 2020, one of WTHR's news directors requested to meet with Andrea Morehead to discuss concerns Andrea Morehead expressed for the station's decision to not air a story Andrea Morehead spearheaded.

33. Rather than inviting Andrea Morehead into an office, the news director instead poked Andrea Morehead's shoulder several times, as if to get her attention.

34. Andrea Morehead was deeply offended by such inappropriate contact and sent an email expressing the same.

4

35. That email was never addressed and the incident was simply ignored.

36. Station management later informed Andrea Morehead that her story would not air because her parents were personally involved in the story.

37. However, another anchor did a story of similar subject matter, in which both the anchor and his mother were personally involved, and the station decided to air that story without concern.

38. Andrea Morehead learned during a commercial break that another anchor's Tokyo Olympics preview was going to air (five months early) in place of Andrea Morehead's story.

39. In September 2019, also after her cancer reappeared, Andrea Morehead pitched another story pertaining to Indiana's lack of tax incentives for movie and television productions.

40. Station management approved this story, and Andrea Morehead completed the interviews and wrote the script for the story, which was also approved.

41. Three (3) days before the scheduled airing, Andrea Morehead learned that her story had been replaced in favor of another anchor's story.

42. Andrea Morehead re-pitched the tax incentive story in January 2020, as Indiana's General Assembly was poised to vote on a tax incentive bill.

43. However, the station had deleted or lost two (2) of four (4) interviews Andrea Morehead completed for the story.

44. WTHR management persistently refused to provide production assistance to Andrea Morehead for interviews and logging tapes, even though this same assistance was provided to similarly-situated colleagues.

45. WTHR management refused to offer this type of assistance to Andrea Morehead, even though it was aware that Andrea Morehead required additional accommodations due to the fatigue and other limitations caused by the cancer treatment.

46. After making this complaint, WTHR management assisted Andrea Morehead and the

tax incentive story finally aired.

47. During July 2019, WTHR management mandated that Andrea Morehead work a double shift to interview Joe Biden at the Indiana Convention Center.

48. Andrea Morehead sent several messages to Perry Pace and Jeff Rosetti informing each of them that she was physically unable to work that extended period of time, due to the debilitating effects of the cancer treatment.

49. Because other anchors would be required to adjust their shifts due to Andrea Morehead's inability to work the extended period of time, WTHR management informed those anchors of the medical reasons Andrea Morehead shared with management for being unable to work.

50. Over the course of time, after her cancer diagnosis was known to the station, several of Andrea Morehead's stories and story ideas were put off or disregarded completely. At times, management would simply rename Andrea Morehead's story ideas and assume credit for Andrea Morehead's story ideas.

51. During this same period, the stories pitched by similarly-situated colleagues continued to receive approval and their stories aired.

52. During one of her cancer treatments, on March 2, 2000, Andrea Morehead received an email from station management that one of her stories had to be cut down from 3 minutes 40 seconds.

53. However, the stories of similarly-situated colleagues received much greater air time allotments, with some extending to two-parts, or running over multiple days.

54. Andrea Morehead's cancer treatments and the subsequent side effects often required accommodations for time away from work.

55. WTHR management made this process cumbersome for Andrea Morehead, and often required additional medical documentation.

56. When Andrea Morehead would provide such additional medical documentation, she did

not intend for the station management to further share that information.

57. Although not particularly germane to the legal claims herein, Andrea Morehead observed another example of hostile work environment following her motor vehicle crash within one block of the WTHR studios.

58. As Andrea Morehead was standing on the sidewalk near sunset, a marked WTHR vehicle with a reporter and photographer passed Andrea Morehead without stopping to offer any assistance.

59. It is common practice for the photographer to drive in order to allow the reporter to work while driving between locations.

60. The reporter was visibly shaken when s/he later approached Andrea Morehead and informed her that the photographer refused to stop once he realized it was Andrea Morehead involved.

## COUNT I – Title I of the Americans with Disabilities Act

61. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

62. Title I of the ADA, 42 U.S.C. § 12111, *et seq.*, and its implementing regulation, 29 C.F.R. Part 1630, permits covered employers, such as TEGNA, to make inquiries into the ability of an employee to perform job-related functions and make inquiries into the nature and severity of the employee's disability, so long as the examination is job-related and consistent with business necessity. 42 U.S.C. §§ 12112(d)(4)(A) – (B); 29 C.F.R. § 1630.14(c).

63. Information obtained as a result of such an examination or inquiry regarding the medical condition or history of any employee must be treated as a confidential medical record. 42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).

64. Confidential medical information may be disclosed in three instances: (1) to inform

supervisors or managers regarding necessary restrictions on the work of the employee and necessary accommodations, (2) to medical personnel when emergency treatment is required, and (3) to government officials investigating compliance with this regulation. 42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1). None of these exceptions apply here.

65. TEGNA failed to keep confidential Andrea Morehead's medical information, which TEGNA had obtained through employment-related medical inquiries. 42 U.S.C. §§ 12112(d)(4)(C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).

66. TEGNA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, *et seq.*, and its implementing regulation, 29 C.F.R. Part 1630.

67. As a result of TEGNA's discriminatory conduct, the complainant suffered and continues to suffer damages.

## COUNT II – Discrimination - Americans with Disabilities Act

68. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

69. Andrea Morehead's cancer diagnosis constitutes a disability, as that term is defined by the ADA.

70. TEGNA discriminated against Andrea Morehead on the basis of disability, subjected her to terms and conditions of employment that are less favorable than those to which employees who are not disabled, or who are not perceived as disabled.

71. TEGNA's actions, together with the disparaging and hostile remarks about her cancer diagnosis and treatment, to which Andrea Morehead was exposed, created a hostile work environment based on Andrea Morehead's disability, in further violation of the ADA.

72. TEGNA's unlawful and discriminatory actions were intentional, willful, and/or taken

in reckless disregard for Andrea Morehead's rights under the ADA, and therefore, TEGNA acted in bad faith.

73. As a direct and proximate result of TEGNA's unlawful and discriminatory actions, Andrea Morehead suffered, and continues to suffer, damages including to but not limited to loss of income and benefits, embarrassment, humiliation, damage to her personal and professional reputation, and emotional distress.

### COUNT III – Retaliation - Americans with Disabilities Act

74. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

75. By the actions described above, TEGNA retaliated against Andrea Morehead because she engaged in protected activity.

76. TEGNA engaged in unlawful employment practices by creating a retaliatory hostile work environment.

77. TEGNA engaged in unlawful employment practices by intentionally discriminating against Andrea Morehead with respect to the terms, conditions, and privileges of employment, because Andrea Morehead raised concerns about discrimination in the workplace and because she reported said discrimination against TEGNA's management.

78. TEGNA's actions interfered with Andrea Morehead's work performance and created an intimidating, hostile, and offensive work environment.

79. TEGNA's conduct was willful, in that it knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by the ADA.

80. As a direct and proximate result of TEGNA's unlawful and retaliatory actions, Andrea Morehead suffered, and continues to suffer, damages including to but not limited to loss of income and benefits, embarrassment, humiliation, damage to her personal and professional reputation, and

emotional distress.

### COUNT IV – Retaliatory Discharge - Americans with Disabilities Act

81. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

82. By the actions described above, TEGNA retaliated against Andrea Morehead by discharging her because she engaged in protected activity. TEGNA terminated Andrea Morehead out of retaliation for filing an EEOC complaint and for seeking redress for the discriminatory behaviors of WTHR management.

83. TEGNA engaged in unlawful employment practices by intentionally discriminating against Andrea Morehead with respect to the privilege of employment, because Andrea Morehead raised concerns about discrimination in the workplace and because she reported said discrimination against TEGNA's management.

84. TEGNA's conduct was willful, in that it knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by the ADA.

85. As a direct and proximate result of TEGNA's unlawful and retaliatory actions, Andrea Morehead suffered, and continues to suffer, damages including to but not limited to loss of income and benefits, embarrassment, humiliation, damage to her personal and professional reputation, and emotional distress.

WHEREFORE, Andrea Morehead prays the Court find in her favor and provide the following relief:

   a. That TEGNA be ordered to pay Andrea Morehead's lost wages and benefits incurred as a result of TEGNA's unlawful and discriminatory practices;

   b. That TEGNA be ordered to pay Andrea Morehead appropriate compensatory and punitive damages for its violations of the ADA:

   c. That TEGNA be ordered to pay Andrea Morehead liquidated damages for its bad faith violation of the ADA;

   d. That TEGNA be ordered to pay prejudgment and post-judgment interest on all sums recoverable;

   e. That TEGNA be ordered to pay Andrea Morehead's reasonable attorney's fees and costs; and

   f. That TEGNA be ordered to provide Andrea Morehead with all other relief that is just and proper.

Respectfully submitted,

By    */s/ Terrance Kinnard*   .
   Terrance Kinnard, #22224-49
   Kinnard & Scott
   320 N. Meridian St., Ste. 406
   Indianapolis, IN 46204
   Telephone: 317-855-6282
   Facsimile: 317-588-1519
   Email: tkinnard@kinnardlaw.net

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel, hereby demand a trial by jury on all issues so triable.

By    */s/ Terrance Kinnard*   .
   Terrance Kinnard, #22224-49