UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREA MOREHEAD ALLEN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-0086-JMS-MJD |
| | ) | |
| TEGNA, INC., *d/b/a WTHR Channel 13*, | ) | |
| VIDEOINDIANA INC., and | ) | |
| WTHR CHANNEL 13, | ) | |
| | ) | |
| *Defendants*. | ) | |

**ORDER**

Plaintiff Andrea Morehead Allen worked as a news anchor for WTHR Channel 13 ("Channel 13")[1] from 1999 until she was terminated in 2021. Ms. Morehead brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101, *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); and Indiana law, alleging claims for disability, gender, and

---

[1] The parties have not been precise in how they refer to Defendants in this action. The Second Amended Complaint—which is the operative complaint in this case—names as Defendants TEGNA, Inc. ("TEGNA"), VideoIndiana, Inc. ("VideoIndiana"), and WTHR Channel 13. [*See* Filing No. 53 at 1 (case caption).] Apart from the caption, however, the Second Amended Complaint makes no mention of VideoIndiana, Inc., and suggests that TEGNA does business as WTHR Channel 13. [*See* Filing No. 53.] In their Answer, Defendants refer to themselves as "VideoIndiana, Inc. d/b/a WHTR (sic) Channel 13 and TEGNA Inc." and deny the allegation that TEGNA does business as WTHR Channel 13. [Filing No. 58 at 1-2; *see also* Filing No. 56 at 1 (Defendants' Motion to Dismiss, referring to themselves as "VideoIndiana, Inc. d/b/a WHTR (sic) Channel 13 and TEGNA Inc.").] Defendants' Corporate Disclosure Statement—which was filed before the Second Amended Complaint—states that VideoIndiana is a subsidiary of TEGNA, and that VideoIndiana does business as WTHR Channel 13. [Filing No. 9.] Based on the foregoing, the Court concludes that the proper Defendants are "VideoIndiana, Inc. d/b/a WTHR Channel 13" and "TEGNA, Inc." The Clerk is **DIRECTED** to update the docket accordingly. For purposes of this Order, the Court uses "Channel 13" or "Defendants" to refer collectively to Defendants TEGNA, Inc. and VideoIndiana, Inc. d/b/a WTHR Channel 13.

1

race discrimination, retaliation, failure to preserve confidentiality, harassment, and breach of contract. [Filing No. 53.] Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of some of Ms. Morehead's claims. [Filing No. 56.] That motion is now ripe for the Court's review.

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations contained in the Second Amended Complaint, [Filing No. 53], which the Court must accept as true at this time.

**A. Ms. Morehead's Employment at Channel 13**

Ms. Morehead began working as a news anchor for Channel 13 in October of 1999. [Filing No. 53 at 2.] In 2018, Ms. Morehead was diagnosed with breast cancer, and she received treatment beginning in 2018 and continuing through 2020. [Filing No. 53 at 3.] Ms. Morehead's cancer treatment and the resulting side effects required her to spend "considerable" time away from work. [Filing No. 53 at 3.] Channel 13 management often required medical documentation as proof of Ms. Morehead's need for accommodations or time away from work, and "made this process cumbersome" for Ms. Morehead. [Filing No. 53 at 6.]

Conversations about Ms. Morehead's medical condition and treatments occurred frequently in the workplace, as management informed other staff members of Ms. Morehead's personal medical details and others "were clearly poking fun at [her] unfortunate cancer diagnosis and the treatment she was receiving." [Filing No. 53 at 3-4.] For example, in July of 2019, Ms. Morehead informed Channel 13 that her impairment from the cancer treatment would make it impossible for her to work a double shift, and Channel 13 subsequently shared information about her medical condition with other news anchors. [Filing No. 53 at 6.] In February 2020, Ms. Morehead learned that several of her coworkers had discussed a bet concerning whether she would return from her treatment. [Filing No. 53 at 3-4.]

When Ms. Morehead discussed her coworkers' behavior with Channel 13's general manager, "other station managers began a relentless campaign of harassment." [Filing No. 53 at 4.] On one occasion in February 2020, Ms. Morehead was supposed to meet with a news director

to discuss a story that she had spearheaded, but instead of discussing the matter, "the news director instead poked [Ms.] Morehead's shoulder several times, as if to get her attention." [Filing No. 53 at 4.] Ms. Morehead was "deeply offended by such inappropriate conduct and sent an email expressing the same," but her email was never addressed by management. [Filing No. 53 at 4-5.]

In addition to the "untenable work environment," [Filing No. 53 at 4], Channel 13 also reduced or replaced Ms. Morehead's news stories with other content, disregarded the story ideas she pitched, delayed the schedule for airing Ms. Morehead's stories, and even assumed credit for some of her ideas, [Filing No. 53 at 5-6]. Similarly situated employees did not face these same issues and continued to receive approval for their stories and have their stories aired. [Filing No. 53 at 6.] Additionally, despite providing production assistance to similarly situated colleagues, Channel 13 refused to provide the same assistance to Ms. Morehead, even though Channel 13 was aware that Ms. Morehead "required additional accommodations due to the fatigue and other limitations caused by [her] cancer treatment." [Filing No. 53 at 5.]

### B. Ms. Morehead's First EEOC Charge

On May 27, 2020, Ms. Morehead filed a Charge of Discrimination ("First Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging that Channel 13 had discriminated against her based on her race, sex, and disability, in violation of the ADA and Title VII. [Filing No. 53 at 7; Filing No. 59-1 at 2-3.][2] Specifically, Ms. Morehead asserted that

---

[2] When ruling on a motion to dismiss, a court may consider "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("It is also well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim. Such documents may be considered by a district court in ruling on the motion to dismiss.") (internal quotations and citations omitted). The relevant EEOC documents were provided by Defendants as exhibits to their Motion to Dismiss, [Filing No. 59-1; Filing No. 59-2; Filing No. 59-3; Filing No. 59-4], and by Ms. Morehead along with her response to the motion, [Filing No. 60-1; Filing

Channel 13: (1) subjected her to a hostile work environment caused by disparaging comments and conduct related to her race, sex, and disability status; (2) treated her inequitably as compared to Caucasian anchors and reporters regarding content, stories being cancelled without proper notice or based on inconsistent explanations from managers, and email complaints being ignored; (3) subjected her to disparaging and false statements, as well as "aggressive verbal attacks," about her character and work ethic; (4) phased her out of her 5:00 p.m. broadcast without a sufficient explanation; (5) subjected her to inappropriate physical contact; and (6) informed her that she was at the cap of her pay scale, while paying Caucasian anchors and meteorologists more money. [Filing No. 59-1 at 2.] Ms. Morehead received a Notice of Right to Sue from the EEOC ("First Notice") on October 15, 2020. [Filing No. 59-2.]

### C.  Ms. Morehead's Termination

Ms. Morehead's employment was terminated on January 11, 2021. [Filing No. 53 at 7-8.] She received two explanations for the termination: first, that she failed to communicate with Channel 13; and second, that she failed or refused to perform her job duties. [Filing No. 53 at 7.] However, Ms. Morehead maintains that she "was in constant communication with [Channel 13's] HR Representative," and that she "never refused to perform her job." [Filing No. 53 at 7.] She alleges that she was terminated because of her disability, her race, and her complaints to both Channel 13 and the EEOC. [Filing No. 53 at 8; Filing No. 53 at 11.]

### D.  Ms. Morehead's Initial Complaint and Amended Complaint

Ms. Morehead filed her initial Complaint in this Court on January 13, 2021, naming the sole Defendant "TEGNA, Inc. d/b/a WTHR Channel 13." [Filing No. 1.] In the initial Complaint, Ms. Morehead asserted the following claims under the ADA only: (1) discrimination based on

---

No. 60-2; Filing No. 60-3; Filing No. 60-4], and the Court will consider these documents in ruling on the Motion to Dismiss.

failure to maintain confidentiality of medical information; (2) discrimination based on unequal terms of employment and hostile work environment; (3) retaliation based on unequal terms of employment and hostile work environment; and (4) retaliatory discharge. [Filing No. 1 at 7-10.] On March 4, 2021, Ms. Morehead filed an Amended Complaint changing the named Defendant to "VideoIndiana, Inc., d/b/a WTHR Channel 13," but making no substantive changes and asserting the same claims as asserted in the initial Complaint. [Filing No. 15; *see also* Filing No. 13; Filing No. 14.]

Regarding preservation of confidentiality, Ms. Morehead alleges in her initial Complaint and her Amended Complaint that Channel 13 failed to keep medical information received through employment-related medical inquiries confidential, that no exception under the ADA permitting disclosure is applicable in this case, and that the conduct thus constituted "discrimination on the basis of disability." [Filing No. 1 at 7-8; Filing No. 15 at 7-8.]

In support of her disability discrimination claim, Ms. Morehead alleges that Channel 13 discriminated against her because of her disability and created a hostile work environment by subjecting her to "terms and conditions of employment that are less favorable than those to which employees who are not disabled, or who are not perceived as disabled" and by subjecting her to "disparaging and hostile remarks about her cancer diagnosis and treatment." [Filing No. 1 at 8-9; Filing No. 15 at 8-9.]

Ms. Morehead also asserts in her initial Complaint and her Amended Complaint that Channel 13 created a retaliatory, hostile, intimidating, and offensive work environment and discriminated against her "with respect to the terms, conditions, and privileges of employment, because [she] raised concerns about discrimination." [Filing No. 1 at 9; Filing No. 15 at 9.] Ms.

Morehead asserts that such conduct was willful and interfered with her work performance. [Filing No. 1 at 9; Filing No. 15 at 9.]

Next, Ms. Morehead asserts that her employment was terminated because she "engaged in protected activity," which she describes as "filing an EEOC complaint and for seeking redress for the discriminatory behaviors of [Channel 13] management." [Filing No. 1 at 10; Filing No. 15 at 10.] Ms. Morehead asserts that Channel 13's conduct was willful and intentionally discriminatory against her and her employment. [Filing No. 1 at 10; Filing No. 15 at 10.]

### E.  Ms. Morehead's Second EEOC Charge

On July 29, 2021, Ms. Morehead filed another Charge of Discrimination with the EEOC ("Second Charge"), in which she mentions the First Charge and further states that she is a "Black disabled woman" who has received "exemplary job performance reviews annually.". [Filing No. 59-3 at 2.] She then states that she was terminated for allegedly failing to communicate with Channel 13, but she asserts that she "was in constant communication" with a Channel 13 HR Representative. [Filing No. 59-3 at 2.] She also states that her formal termination letter listed the cause of her termination as "failing or refusing to perform [her] job duties," which Ms. Morehead contends "is not true." [Filing No. 59-3 at 2.] She asserts that "[s]imilarly situated Caucasian, male and non-disabled employees have engaged in conduct of comparable seriousness" without being terminated, and that throughout her employment, she "was paid less than [her] Caucasian and male colleagues and repetitively physical[ly] abused by the News Director." [Filing No. 59-3 at 2.] Ms. Morehead received a Notice of Right to Sue ("Second Notice") in response to the Second Charge on September 22, 2021. [Filing No. 59-4 at 2.]

### F. Ms. Morehead's Second Amended Complaint

Ms. Morehead filed a Second Amended Complaint in this case on November 11, 2021, which reasserts each of the claims already asserted in the original and Amended Complaints and also adds additional claims. [Filing No. 53.] In total, the Second Amended Complaint asserts the following claims: (1) discrimination under the ADA based on failure to maintain confidentiality of medical information ("Count I"); (2) discrimination under the ADA based on unequal terms of employment and hostile work environment ("Count II"); (3) retaliation under the ADA based on unequal terms of employment and hostile work environment ("Count III"); (4) retaliatory discharge under the ADA ("Count IV"); (5) race discrimination under Title VII and § 1981 ("Count V"); (6) gender discrimination under Title VII and the EPA ("Count VI"); (7) harassment and hostile work environment under Title VII and the ADA ("Count VII"); and (8) breach of Ms. Morehead's employment contract under Indiana law ("Count VII"). [Filing No. 53 at 8-14.]

Counts I through IV remain the same as in the earlier versions of the complaint. Regarding the race discrimination claim in Count V, Ms. Morehead asserts that Defendants paid her "less than her white counterparts" and terminated her because of her race. [Filing No. 53 at 11-12.] As for the gender discrimination claim in Count VI, Ms. Morehead asserts that Defendants failed to pay her "equal pay due to her sex" and terminated her due to her gender. [Filing No. 53 at 12.] For her harassment and hostile work environment claim in Count VII, Ms. Morehead asserts that Defendants harassed her because of her gender and her disability. [Filing No. 53 at 12.] Finally, for her breach of contract claim in Count VIII, Ms. Morehead asserts that Defendants breached Ms. Morehead's employment contract by prematurely terminating her employment. [Filing No. 53 at 12.]

Defendants have moved to dismiss the Title VII race discrimination claim in Count V, the Title VII gender discrimination and the EPA claims in Count VI, and the Title VII and ADA harassment and hostile work environment claims in Count VII. [Filing No. 56.] The motion is fully briefed and ripe for the Court's decision.

### III.
### DISCUSSION

Defendants assert that their Motion to Dismiss should be granted for two reasons: (1) the Title VII and ADA claims added in Counts V, VI, and VII of Ms. Morehead's Second Amended Complaint are untimely; and (2) Ms. Morehead failed to plead facts supportive of her EPA claim in Count VI. [Filing No. 57.] The Court will address each of these arguments in turn.

**A.  Whether Ms. Morehead's Additional Title VII and ADA Claims in the Second Amended Complaint Are Timely**

According to Defendants, Ms. Morehead's "new Title VII and ADA claims"—meaning the claims in Counts V, VI, and VII alleging race discrimination, gender discrimination, and hostile work environment based on gender and disability—"fail because they were not timely filed." [Filing No. 57 at 5.] Defendants contend that the "First Charge raised claims relating to race, sex, and disability discrimination with respect to terms and conditions of employment, pay, harassment, and hostile work environment," but Ms. Morehead "elected to assert claims only under the ADA" in her initial Complaint. [Filing No. 57 at 7.] Defendants argue that because the Second Amended Complaint's additional claims for Title VII and ADA harassment and disparity in pay were "'like or reasonably related' to the facts and claims asserted in her May 27, 2020 First Charge," Ms. Morehead should have filed all her claims within ninety days after October 15, 2020, the date she received her First Notice, and therefore the claims in the Second Amended Complaint filed on November 11, 2021 are untimely. [Filing No. 57 at 5-6]. In addition, Defendants assert that Ms. Morehead's receipt of the Second Notice—dated September 22, 2021—should not "reset the clock"

on her opportunity to assert the claims. [Filing No. 57 at 7.] Defendants further argue that Ms. Morehead's failure to include the other claims available to her in any complaint within the prescribed ninety-day window after receiving the First Notice should preclude her from amending her complaint now. [Filing No. 57 at 7.]

Ms. Morehead responds that her Second Amended Complaint was timely because she filed it within ninety days of receiving the Second Notice and because the additional claims asserted in the Second Amended Complaint relate back to her original Complaint. [Filing No. 60 at 4.] Ms. Morehead argues that Defendants' only qualm with her Second Amended Complaint is that the two EEOC Charges are similar. [Filing No. 60 at 4.] She contends that Fed. R. Civ. P. 15(c) authorizes an amended complaint to relate back to the date of the original complaint if the claim asserted in the amended complaint arose out of the conduct, transaction, or occurrence set forth in the original pleading. [Filing No. 60 at 4-5.] She asserts that such amendment should be "freely allowed" to ensure that cases are decided on their merits, and a plaintiff need not pursue the same legal theories in both complaints if they arise out of the same facts. [Filing No. 60 at 5.] Additionally, Ms. Morehead contends that she filed the Second Charge with the EEOC and the subsequent Second Amended Complaint to incorporate "all relevant claims and correct any errors." [Filing No. 60 at 5-6.] She asserts that "Defendants were on notice of [Ms. Morehead's] factual assertions and potential claims," and therefore, Defendants will not be prejudiced by having to defend the claims added to the case by the Second Amended Complaint. [Filing No. 60 at 6.]

Defendants reply that Ms. Morehead "asks the Court to ignore the First Charge and instead measure timeliness based on dates connected to her Second Charge." [Filing No. 61 at 2.] In response to Ms. Morehead's assertion that the Second Amended Complaint relates back, Defendants assert that "new and distinct claims" cannot relate back, "even though they may arise

from the same general occurrence or injury." [Filing No. 61 at 3 (citing *Lewellen v. Schneck Med. Ctr.*, 2009 WL 435094, at *4 (S.D. Ind. Feb. 20, 2009)).]

Dismissing a complaint as untimely at the pleading stage "is appropriate when a plaintiff pleads [herself] out of court by alleging facts sufficient to establish the complaint's tardiness." *Fajolu v. Portfolio Recovery Assocs., LLC*, 354 F. Supp. 3d 899 (N.D. Ill. 2018) (citing *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). A plaintiff has ninety days after receiving an EEOC Notice of Right to Sue to bring a civil action under the ADA or Title VII. *Houston v. Sidley & Austin*, 185 F.3d 837, 838 (7th Cir. 1999) (citing 42 U.S.C. § 12117(a)); 42 U.S.C. § 2000e-5(f)(1)). Furthermore, the case brought in federal court must be "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d, 497, 500 (7th Cir. 1994)); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) ("[T]here need only be 'a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.") (quoting *Cheek*, 31 F.3d at 500). At a minimum, the claims must "describe the same conduct and implicate the same individuals." *Huri*, 804 F.3d at 831-32 (citing *Moore v. Vital Prods.*, 641 F.3d 253, 257 (7th Cir. 2011)).

In this case, Defendants acknowledge that all of Ms. Morehead's various claims asserted in the Second Amended Complaint are "like or reasonably related" to the First Charge. [Filing No. 57 at 6 ("It is beyond question that Plaintiff's 'new' race, sex, and disability discrimination claims concerning pay and harassment were included or at the least were 'like or reasonably related' to the facts and claims asserted in her May 27, 2020 First Charge.").] Therefore, Ms. Morehead's receipt

of the First Notice triggered the 90-day statute of limitations period in which she was required to file her Title VII and ADA claims in federal court. See Houston, 185 F.3d at 838. Defendants do not dispute that Ms. Morehead filed her original Complaint within ninety days of receiving the First Notice. The dispositive question in this case, therefore, is whether Ms. Morehead's Second Amended Complaint, which was filed more than ninety days after receiving her First Notice, can relate back to the date of the original Complaint, which was filed within the ninety-day window. If the answer is in the affirmative, all of Ms. Morehead's claims would be considered timely filed.

Federal Rule of Civil Procedure 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The Seventh Circuit has held that "an amended complaint in which the plaintiff merely adds legal conclusions or changes the theory of recovery will relate back to the filing of the original complaint if 'the factual situation upon which the action depends remains the same and has been brought to the defendant's attention by the original pleading.'" Henderson v. Bolanda, 253 F.3d 928, 931 (7th Cir. 2001) (citations omitted). Furthermore, "[t]he central inquiry under Rule 15(c) is whether the original complaint 'gave the defendant enough notice of the nature and scope of the plaintiff's claim that [the defendant] shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one.'" Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc., 902 F.3d 735, 741 (7th Cir. 2018) (quoting Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 573 (7th Cir. 2006)). Additionally, even "significant" changes to a complaint "can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." Supreme Auto, 902 F.3d at 741 (citation omitted).

Defendants have asserted that Ms. Morehead's Second Amended Complaint cannot relate back because she has raised "new and distinct claims." [Filing No. 61 at 3 (citing *Lewellen*, 2009 WL 435094, at *4).] As an initial matter, this argument is contrary to Defendants' assertion that it is "beyond question" that the claims added to the Second Amended Complaint are "like or reasonably related" to the claims raised in the First Charge. [*See* Filing No. 57 at 6.] Regardless, Defendants misinterpret the very case they cite as support for this proposition. In *Lewellen*, the Court stated that relation back is improper in cases where "new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery." 2009 WL 435094, at *3 (quoting *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985)). The underlying rationale for this requirement is ensuring that defendants receive notice of the claims against them. *Id.* at *3. In this case, Ms. Morehead's factual allegations were identical in each of the versions of her complaint for Paragraphs 1 through 60, other than changing which Defendant she referenced. [Filing No. 1; Filing No.15; Filing No. 53.] Her Second Amended Complaint added Paragraphs 61 through 74, which outline facts relating to her termination and her pay comparisons to male, Caucasian coworkers, [Filing No. 53 at 7-8], conduct that was already referenced in the earlier pleadings and in the First and Second Charges.

Defendants have not asserted that they were surprised, unfairly prejudiced, or otherwise disadvantaged by the added claims in the Second Amended Complaint, nor would this Court have found that to be the case. Ms. Morehead's original Complaint, First Charge, and First Notice were all sufficient to place Defendants on notice of Ms. Morehead's potential claims under Title VII, the ADA, and the EPA. That her original Complaint only asserted claims under the ADA does not preclude her from subsequently amending her complaint to bring the other claims authorized in the First Notice. To hold otherwise would be contrary to the purpose of permitting relation back

in the first place, which is described by the Supreme Court as: "balanc[ing] the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (citations omitted). Defendants' argument that Ms. Morehead's Second Amended Complaint would have needed to be filed within ninety days of receiving her First Notice defies the relation-back doctrine.

Defendants further assert that Ms. Morehead's filing of the Second Charge was merely an attempt to "reset the clock" so she could add the additional claims to her original Complaint. [Filing No. 57 at 7.] However, Defendants cite to no authority indicating that complainants may not file more than one EEOC Charge. Rather, the Seventh Circuit has acknowledged that plaintiffs are not required to file additional EEOC charges as new events (specifically retaliation, which has been alleged here) occur, with the rationale being a practical one meant to "avoid futile procedural technicalities and endless loops." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 482-83 (7th Cir. 1996), and *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) (superseded by statute on other grounds)). Ms. Morehead was not required to file the Second Charge, and doing so should not penalize her in any way. And while the Second Charge did not "reset the clock," it is also irrelevant to the question of whether the Second Amended Complaint relates back to the initial Complaint, which was timely filed based on the First Charge.

In sum, all of the claims alleged in Ms. Morehead's Second Amended Complaint relate back to the filing of her original Complaint, and therefore were timely filed. To the extent that Defendants argue that some of the claims asserted in the Second Amended Complaint must be dismissed as untimely, their Motion to Dismiss is **DENIED**.

B.      Whether Ms. Morehead Failed to State a Claim Under the EPA

Defendants also argue that Ms. Morehead's claim under the EPA, which is part of Count VI, consists of only conclusions, not facts, and it therefore falls short of the minimum required by Fed. R. Civ. P. 8(a)(2). [Filing No. 57 at 7.] Defendants assert that Ms. Morehead's statements in Paragraphs 68 and 69 are conclusory and do not "contain any information about the actual job duties or the level of skill, effort, or responsibility required to perform [Ms. Morehead's] job." [Filing No. 57 at 8-9.]  Those paragraphs provide, respectively, that "[t]hroughout [Ms.] Morehead's career at Defendants she was paid less than similarly situated male and Caucasian employees," and "[t]he male's (sic) compensation was greatly higher than [Ms.] Morehead's even though both of their positions required the same skill, effort, responsibility and they worked under similar working conditions at Defendant." [Filing No. 53 at 8.]  Defendants argue that the Second Amended Complaint "fails to identify any alleged male comparator, provide any information regarding the work of any alleged male comparator, or provide any information regarding [Ms. Morehead's] own compensation or the compensation of any alleged male comparator." [Filing No. 57 at 9.]  Without these details, Defendants contend that the Second Amended Complaint "contain[s] no facts which could show a plausible entitlement to relief under the EPA." [Filing No. 57 at 9.]

In response, Ms. Morehead argues that dismissal is only warranted "if no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint." [Filing No. 60 at 6 (citing *Cher v. Ill. Educ. Ass'n.*, 423 F.3d 726, 729 (7th Cir. 2005)).]  Ms. Morehead asserts that a plaintiff is only required to plead a "short and plain statement of the claim that will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests," [Filing No. 60 at 6-7], and that that requirement is "satisfied when the complaint pleads a bare minimum of facts necessary to put the Defendant on notice of the claim so that it can file an

answer," [Filing No. 60 at 7 (citing *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007))]. Ms. Morehead argues that a complaint does not need to "set forth legal theories or comprehensive factual narratives," nor does it have to "lay out facts corresponding to every element of a legal theory." [Filing No. 60 at 7.] She asserts that Defendants "attempt[] to impose a heightened pleading requirement" on her, and that she is only required to identify "the type of discrimination that she thinks occur[ed]," "by whom," and "when." [Filing No. 60 at 7-8 (citing *Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2010)).] Ms. Morehead also argues that Paragraphs 68, 69, and 19 in the Second Amended Complaint are responsive to Defendants' alleged deficiencies in identifying her comparators and her job duties. [Filing No. 60 at 8-9.] Paragraph 19 states that Ms. Morehead's "workday was often split between various tasks, including but not limited to: brainstorming story ideas, conducting taped interviews, editing stories for on-air presentation, preparing for newscasts, and anchoring WTHR's newscasts." [Filing No. 53 at 3.] Finally, Ms. Morehead asserts that Defendants' comprehensive brief in support of the Motion to Dismiss is also evidence that her Second Amended Complaint clearly put Defendant on notice of her claims. [Filing No. 60 at 9.]

Defendants reply that Ms. Morehead's approach to pleading standards is rooted in case law that was nullified by the Supreme Court's holdings in *Twombly* and *Iqbal*. [Filing No. 61 at 5.] Defendants also assert that Ms. Morehead "does not provide comparable factual allegations in support of her EPA claim," which Defendants argue distinguishes Ms. Morehead's pleading from those in the prior cases her brief cites to. [Filing No. 61 at 5.] Specifically, Defendants assert that Ms. Morehead's pleading is deficient because she "has not provided her specific rate of pay, nor has she identified any alleged comparator(s) by name or job title, nor has she plead any alleged comparator's rate of pay." [Filing No. 61 at 6.] Defendants compare Ms. Morehead's Second

Amended Complaint to the complaints in the cases cited by Ms. Morehead and argue that her claim is deficient in comparison. [Filing No. 61 at 6-7.] Defendants argue that Ms. Morehead's pleading did not give them a "hint of the identity of the comparable male employee or his position," and simply alleging that she was paid less than male coworkers fails to meet the pleading standard. [Filing No. 61 at 7 (citing *Wade v. Morton Bldgs., Inc.*, No. 09-1225, 2010 WL 378508, at *6 (C.D. Ill. Jan 27, 2010)).]

To successfully allege a claim under the EPA, a plaintiff must allege that "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort, and responsibilities, and (3) the work was performed under similar working conditions." *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (quoting *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008)); 29 U.S.C. § 206(d)(1). Those allegations may not be "legal conclusions or conclusory allegations," *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011), and they must "plausibly suggest an entitlement to relief," *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (quoting *McCauley*, 671 F.3d at 617). All that is required of plaintiffs at the motion-to-dismiss stage is that they have provided "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (citing *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1099 (7th Cir. 2015)); *see also Luevano*, 722 F.3d at 1028 (reaffirming, post-*Iqbal* and -*Twombly*, the Seventh Circuit's previous holdings that "in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex," and provide enough information "to give the defendant sufficient notice to enable [it] to begin to investigate and prepare a defense") (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)).

The Court must draw on "its judicial experience and common sense" when determining whether a plaintiff has failed to state a claim. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (citing *McCauley*, 671 F.3d at 616). Ms. Morehead's allegations, in the context of the facts contained in the rest of the Second Amended Complaint and Ms. Morehead's First Charge and Second Charge, satisfy the federal pleading standard. Ms. Morehead "has given enough details about the subject-matter of the case to present a story that holds together." *McNamee v. Family Focus Inc.*, 2015 WL 4602944, at *2 (N.D. Ind. July 30, 2015) (citing *Swanson*, 614 F.3d at 404). She has alleged, in accordance with Circuit precedent, the type of discrimination she thinks occurred (relevant here, sex); by whom (Channel 13); and when (throughout the duration of her career at Channel 13). *Swanson*, 614 F.3d at 405 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)). At the pleading stage, "[t]his is all that she need[s] to put in the complaint." *Id.* Whether she can actually prove her case under the EPA is a question that "can safely be postponed to another day." *Huri*, 804 F.3d at 834.

Defendants contend that Ms. Morehead is required to plead her male comparators' names, job titles, and rates of pay in comparison to hers. [Filing No. 61 at 6.] However, common sense indicates that when Ms. Morehead references similarly situated male, Caucasian news anchors in her complaints and the EEOC charges, Defendants must have a good idea of who those employees are, their job duties, and their pay rates. This information may be evidence that Ms. Morehead will ultimately use to try to prove her claim, but she is not required to have and allege such evidence at the pleading stage. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (recognizing that "evidence is not required at the pleading stage"). Again, all that Ms. Morehead is required to do at this point is provide "enough facts to raise a reasonable expectation that

discovery will reveal evidence supporting the allegations." *Huri*, 804 F.3d at 833 (citing *Olson, 784 F.3d 1099*).  She has done that here.

In sum, common sense dictates that Defendants have been provided with fair notice of Ms. Morehead's claim under the EPA and the grounds upon which it rests.  Because Ms. Morehead has sufficiently plead her claim under the EPA in accordance with Fed. R. Civ. P. 8(a), Defendants' motion to dismiss the EPA claim is **DENIED**.

## IV.
### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, [56], is **DENIED**.  The Clerk is **DIRECTED** to update the docket to list "VideoIndiana, Inc. d/b/a WTHR Channel 13" and "TEGNA, Inc." as the proper Defendants in this action.

Date: 3/29/2022

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**